IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL NEWELL | : | CIVIL ACTION |
| v. | : | |
| | : | No. 16-4779 |
| | : | |
| MIKE HERNANDEZ, *et al.* | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                                **February 24, 2017**

After a Pennsylvania trial court judge incarcerated a probationer who admitted he tested positive for using an illegal substance, the probationer appealed the judge's sentence based on the admitted probation violation. His appeal remains pending. Now, during his Pennsylvania appeal, he seeks damages under 42 U.S.C. § 1983 and Pennsylvania state law for "loss of liberty," false imprisonment, malicious prosecution, and "false allegations." Having judicially admitted the probable cause for violating probation, he cannot claim false arrest or false imprisonment. His remaining claims require a favorable termination in the Pennsylvania courts. The Pennsylvania courts have not, at least as yet, terminated the parole violation conviction in his favor. In the accompanying Order and under 28 U.S.C. § 1915(e)(2)(B)(ii), we dismiss the *pro se* probationer's Complaint as meritless at this time.

**I.    Background**

On March 2, 2016, while on probation, Mr. Newell appeared at a probation office, where his urine tested positive for an illegal substance.[1] After learning the results, Mr. Newell's probation officer, Mike Hernandez, handcuffed Mr. Newell. Jane Doe, a supervisor in the Probation Office, asked Mr. Newell why he had not paid his probation fees. Mr. Newell replied, "I did pay last month with a check but it was sent back."[2] Apparently, Mr. Newell did not put his

name on the check.³

Ms. Doe then asked Mr. Newell why he missed a group session. Mr. Hernandez also looked through Mr. Newell's phone and learned Mr. Newell had online social media accounts on his phone. Mr. Newell admitted he had social media accounts, to which Mr. Hernandez replied, "[C]ome on Newell you know you're not supposed to have that on your phone."⁴ Mr. Newell claims he did not know he lacked permission to access social media.

Ms. Doe then repeated her question to Mr. Newell, asking why he had missed his group session. Mr. Newell replied he missed it because he had to go to a doctor's office to get tested for HIV. Mr. Newell explained he called and left messages with the therapist regarding past group sessions he could not attend. Regarding the most recent group session, Mr. Newell claims he called Matt Shaffer, a supervisor at Joseph J. Peters Institute, who granted him permission to miss the session. Mr. Hernandez attempted to call Mr. Shaffer to verify Mr. Newell's explanation, but Mr. Shaffer did not pick up the phone. Ms. Doe told Mr. Newell, "Well I don't believe you anyway. You were told not to be on social media, you're not paying probation fees [and] you have dirty urine. This is not your first time doing this so guess where you're going? You are going to jail."⁵ Authorities took Mr. Newell to a local Philadelphia jail.⁶

On March 22, 2016, Mr. Newell attended his Gagnon⁷ hearing before the Honorable Joan A. Brown for allegedly violating his probation. During the hearing, Mr. Hernandez said Mr. Newell accessed social media accounts despite signing paperwork agreeing he could not access social media. Mr. Newell claims Mr. Hernandez told Judge Brown "false information" by telling her Mr. Newell had been informed about being prohibited from accessing social media. Mr. Newell, however, admits his positive drug test supplied sufficient cause to incarcerate him: "[Judge Brown] didn't have enough evidence to incarcerate the plaintiff accept [sic] for a 'dirty

urine' . . . ."[8]

According to Mr. Newell's criminal docket, Judge Brown revoked Mr. Newell's probation and sentenced him to two to four years in state confinement followed by five years probation. On May 18, 2016, Judge Brown denied Mr. Newell's motion for reconsideration of sentence.

On June 11, 2016, Mr. Newell appealed Judge Brown's decision to the Pennsylvania Superior Court. On October 18, 2016, the Pennsylvania Superior Court quashed Mr. Newell's appeal as untimely filed. On October 28, 2016, Mr. Newell refiled his appeal. His second appeal is still pending.

**II.  Discussion**

Mr. Newell sued Mr. Hernandez, Ms. Doe, Mr. Shaffer, the Board of Probation and Parole, and the City of Philadelphia for damages arising from "loss of liberty," false imprisonment, malicious prosecution, and "false allegations."[9] Mr. Newell seeks monetary compensation for his 200 days of incarceration. On October 19, 2016, we dismissed Mr. Newell's claims against the Board of Probation and Parole and the City of Philadelphia.[10] We construe Mr. Newell's remaining claims against Mr. Hernandez, Ms. Doe, and Mr. Shaffer as claims for damages under 42 U.S.C. § 1983 and state law claims for false arrest, false imprisonment, and malicious prosecution.

To pursue a § 1983 claim for unconstitutional conviction or imprisonment, Mr. Newell must allege "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[11] We must dismiss a § 1983 action for damages "if 'success in the action would necessarily demonstrate the

3

invalidity of confinement or its duration.'"[12] Mr. Newell's claims rest on his allegations authorities improperly incarcerated him for 200 days. Because Mr. Newell is currently in the process of appealing his sentence, which has not been expunged, invalidated, or otherwise called into question, we must dismiss his § 1983 action.

In addition, we dismiss Mr. Newell's § 1983 false arrest and false imprisonment claims, and his state law claims for false arrest and false imprisonment because he judicially admitted testing positive on the drug test creating the probable cause for finding he violated his probation. In Pennsylvania, a false arrest is defined as (1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so.[13] "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention."[14] The requirements for false arrest and false imprisonment claims under § 1983 and Pennsylvania law are the same.[15] Mr. Newell cannot demonstrate the unlawfulness of his arrest or detention because he admits his urine tested positive for an illegal substance, which he concedes constituted a proper basis for his incarceration: "[Judge Brown] didn't have enough evidence to incarcerate the plaintiff accept [sic] for a 'dirty urine' . . . ."[16] Because Mr. Newell's positive drug test plead on the face of his Complaint supplied adequate grounds for his arrest and detention, we dismiss Mr. Newell's claims for false arrest and false imprisonment under § 1983 and Pennsylvania law.

We must also dismiss Mr. Newell's state law claim for malicious prosecution. "In order to subject a person to liability for malicious prosecution, the criminal proceedings must have terminated in favor of the accused."[17] A favorable termination includes: (a) a discharge by a magistrate at a preliminary hearing; (b) the refusal of a grand jury to indict; (c) the formal abandonment of the proceedings by the public prosecutor; (d) the quashing of an indictment or information; (e) an acquittal; (f) a final order in favor of the accused by a trial or appellate court.[18]

As Mr. Newell's present conviction still stands, he cannot demonstrate favorable termination. We must dismiss Mr. Newell's claims for malicious prosecution against all Defendants.

### III.     Conclusion

After a defendant moves to dismiss a complaint, we are obligated to inform the plaintiff of his or her right to amend the complaint within a set period of time unless the amendment would be inequitable or futile.[19]  An amendment is futile as to his § 1983 and state law claims for false arrest and false imprisonment because Mr. Newell judicially admitted to engaging in conduct which he concedes supplies adequate cause to incarcerate him.  We dismiss those claims with prejudice.  We dismiss Mr. Newell's § 1983 and state law malicious prosecution claims without prejudice to Mr. Newell's right to reinstitute an action if he is able to demonstrate favorable termination at some point in the future.

---

[1] According to Paul Newell's criminal docket, which we may consider as a matter of public record, Mr. Newell pled guilty to burglary and rape on October 10, 2001, resulting in a sentence of confinement followed by probation.  Mr. Newell does not explain why he appeared at the probation office on March 2, 2016.

[2] ECF Doc. No. 5, at p. 5.

[3] *Id.* ("It was sent back because it didn't have my name on the check . . . .").

[4] *Id.* at p. 6.

[5] *Id.* at p. 7.

[6] *Id.* ("Plaintiff was apprehended & taken to a Philadelphia City County Jail.").

[7] In *Gagnon v. Scarpelli*, , the Supreme Court held a person accused of violating the terms of his probation is entitled to two hearings before revocation and re-sentencing. *Heilman v. T.W. Poness And Assoc.*, 2009 WL 82707, *1 n.1 (3d. Cir. 2009) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973)).  The first hearing serves to determine whether authorities had probable cause for the revocation. *Id.* (citing *Gagnon*, 411 U.S. at 782). The second hearing serves to determine whether the individual violated his or her probation. *Id.* (citing *Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa. Super. 2001)).

---

[8] *Id.* at p. 4.

[9] ECF Doc. No. 5, at p. 9.

[10] ECF Doc. No. 4.

[11] *Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 344 (3d Cir. 2015) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)).

[12] *Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)) (brackets omitted).

[13] *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) (quoting *Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821, 869 (E.D. Pa. 2000)).

[14] *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

[15] *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000) (citing *Patzig v. O'Neil*, 577 F.2d 841, 851 (3d Cir. 1978)) ("Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages."); *James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012) ("To state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful.").

[16] ECF Doc. No. 5, at p. 4.

[17] *Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993) (quoting Restatement (Second) of Torts § 658 (1977)).

[18] *Id.* (quoting Restatement (Second) of Torts § 659 (1977)).

[19] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("[T]he court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").